UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ST. PAUL SURPLUS LINES INSURANCE COMPANY; DOES 1 through 10, inclusive,<br><br>                    Defendants. | No. 2:07-cv-01744-TLN-EFB<br><br>**ORDER CLARIFYING THIS COURT'S FINDINGS OF FACT AND CONCLUSION OF LAW** |

The instant matter is before the Court pursuant to Defendant St. Paul Surplus Lines Insurance Company's ("St. Paul") Motion for Clarification of Findings of Fact and Conclusions of Law. (ECF No. 273.) Plaintiff Continental Casualty Company ("Continental") opposes St. Paul's interpretation of this Court's Findings of Fact and Conclusions of Law. (ECF No. 281.) The Court has considered the arguments presented by both parties' briefing and hereby issues the following order to clarify the Court's Findings of Fact and Conclusions of Law.

The question presented by the parties is actually one that was not litigated or argued before this Court—whether the $250,000 self-insured retention ("SIR") clause within St. Paul's policy was satisfied through the $1,000,000 insurance policy that Continental exhausted in defending their insured, Tasq Technology, Inc. ("Tasq") and its lessor Crown Equipment

1

Corporation ("Crown"). The parties have requested the Court's determination on this matter which is appropriate and necessary since there are no material issues of fact, and since this determination concerns a matter of law. For the reasons set forth below, the Court finds that the SIR was satisfied by payments made by Continental on Crown's behalf while defending the wrongful death lawsuit brought against Crown and Tasq.

## I.     BRIEF FACTUAL BACKGROUND

As discussed in detail in the Court's Findings of Fact and Conclusions of Law, this matter involves a dispute between two insurance companies that issued policies for Crown and Tasq in a wrongful death action. (Findings of Fact and Conclusions of Law, ECF No. 270.) Continental issued a general liability insurance policy with a per occurrence limit of $1,000,000 that applied to Tasq. (ECF No. 270.) This policy covered Crown as an additional insured. (ECF No. 270.) Continental also provided a $25,000,000 umbrella policy to cover additional liability exceeding the limits of its primary policy. St. Paul issued a general liability policy with limits of $5,000,000 to Crown. (ECF No. 270.)

In settling the underlying wrongful death lawsuit, Continental paid the entire $1,000,000 limit of its primary policy along with $2,500,000 of its umbrella policy to settle all claims against both Crown and Tasq. St. Paul refused to contribute to that settlement despite its $5,000,000 in general liability coverage inuring to Crown's benefit.

On September 17, 2014, this Court found as follows:

> 29.    [T]he Court finds that an appropriate allocation of the settlement paid to settle the Coupé action is 75% to Crown and 25% to Tasq. Although earlier estimates of fault opined that Tasq and Crown shared similar exposure, Continental has put on persuasive evidence that the Coupé plaintiffs were shifting their trial strategy focusing on a purported malfunction of the forklift to the refusal of Crown to incorporate vertical posts in its design.
>
> 30.    Therefore, Continental shall recover judgment from St. Paul in the amount of $1,875,000, which represents 75% of the $2,500,000 paid by Continental from its umbrella policy. (See RT 874:13-22 (setting forth damages calculations incorporating pro rata share of policies and $250,000 self-insured retention).)

(ECF No. 270.) The Court did not decide the matter of whether the $250,000 SIR had been paid

because the parties did not address this matter during the trial. Although, the SIR was mentioned during trial, the parties' counsel did not address whether Continental's payments in defending Crown sufficed to satisfy the SIR clause in the insurance policy issued by St. Paul.

## II. LEGAL STANDARD

After a nonjury trial, the court may, upon motion, clarify findings of fact, which materially affect the parties' rights and obligations. Fed. R. Civ. P. 52(b); *Crane-McNab v. Cnty of Merced*, 773 F. Supp. 2d 861, 873 (E.D. Cal. 2011); *Davis v. Mathews*, 450 F. Supp. 308, 318 (E.D. Cal. 1978). Rule 52(b) provides: "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Motions under Rule 52(b) are primarily designed to correct findings of fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a rehearing. *See Davis v. Mathews*, 450 F. Supp. at 318.

Here, the parties have differing interpretations of the Findings with respect to the application of the SIR in St. Paul's policy, which materially affect the amount of the Judgment. Thus, clarification is in order so that the parties will know with certainty their rights and obligations.

## III. ANALYSIS

The question here is whether the funds that Continental paid on behalf of Crown's defense satisfies the SIR provision within St. Paul's policy. At the outset, the Court notes that the policy is silent as to whether the insured itself, not other insurers, must pay the SIR amount. Thus, the facts of this case are analogous to those in *Vons Companies v. United States Fire Company*, 78 Cal. App. 4th 52 (2000). There, the Second District Court of Appeals held that the policy did not preclude payment of the SIR through other insurance. For the reasons set forth below, this Court finds that the holding in *Vons* applies to this case and thus the $250,0000 SIR requirement was satisfied by Continental's $1,000,000 payment on behalf of Tasq and Crown.

Insurance contracts are subject to the ordinary rules of contract interpretation. *Gen. Star Indem. Co. v. Superior Court*, 47 Cal. App. 4th 1586, 1592 (1996). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties, and such intent is

to be inferred, if possible, solely from the written provisions of the contract." *Id.* "If contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "Policy provisions are ambiguous only if they are capable of two or more reasonable constructions." *Vons Companies, Inc.*, 78 Cal. App. 4th at 58. Policy terms must be "construed in the context of the whole policy and the circumstances of the case and cannot be deemed ambiguous in the abstract." *Id.* (citing *General Star*, 47 Cal. App. 4th at 1592–93). "If an ambiguity cannot be eliminated by the language and context of the policy, then the court must invoke the principle that ambiguities are construed against the party who caused the uncertainty- the insurer-in order to protect the insured's reasonable expectations of coverage." *Id.*

The St. Paul policy provides:

> The self-insured retentions shown in the Coverage Summary and the information contained in this section fix the amount of damages which you'll be required to pay, and over which the limits of coverage will apply in accordance with the Limits Of Coverage section, regardless of the number of.
>
> • persons or organizations making claims or bringing suits.
>
> We'll consider any voluntary payment of, or assumption of any obligation to pay, damages for covered injury or damage above a self-insured retention without our consent to be your responsibility.
>
> Bodily injury and property damage each event retention - other than products and completed work. You'll be responsible for the amount of damage up to this retention for all covered bodily injury and property damage that:
>
> • results from other than your products and completed work;
>
> • is sustained by all persons and organizations; and
>
> • results from any one event.
>
> This retention is reduced up to the amount of the medical expenses each person retention paid by you.
>
> Products and completed work bodily injury and property damage each event retention.
>
> You'll be responsible for the amount of damages up to this retention for all covered bodily injury and property damage that
>
> • results from our products or completed work;
>
> • is sustained by all persons and organizations; and

4

       • results from any one event.

       . . .

       If there is any other valid and collectible insurance for injury or damage covered by this agreement, other than insurance specifically purchased to be excess over this agreement, the Other primary insurance section applies.

       Other insurance means insurance, or the funding of losses, that's provided by or through:

       • another insurance company;

       • a risk retention group;

       • a self-insurance method or program, other than any funded by you and over which this agreement applies; or

       • any similar risk transfer or risk management method.

       . . .

       When this agreement is excess insurance over any other insurance, we'll pay only the amount of damages that's in excess of:

       • the total amount that all such other insurance would pay if this agreement didn't exist and

       • the total of all deductible and self-insured amounts under all such other insurance.

Thus, like *Vonn*, 78 Cal. App. 4th at 60, and *General Star National Insurance Corp. v. World Oil Co.*, 973 F. Supp. 943, 947–48 (C.D. Cal. 1997) [hereinafter *World Oil*], the St. Paul policy is silent as to whether payments from other insurance companies apply to the SIR provision and thus ambiguous as to whether Crown was required to pay the deductible from its own funds or could insure that amount elsewhere. Here, like in *Vonn* and *World Oil* that ambiguity is resolved against the insurer. *Vonn Companies Inc.*, 78 Cal. App. 4th at 60; *World Oil Co.*, 973 F. Supp. at 947–48.

      The SIR amount was $250,000. The Court has already determined that appropriate allocation of the settlement paid to settle the Coupé action is 75% to Crown and 25% to Tasq. (ECF No. 270 at ¶ 29.) Therefore, 75% of the $1,000,000 settlement paid by Continental was on behalf of Crown, totaling $750,000. That $750,000 payment more than satisfies Crown's $250,000 SIR. Accordingly, the Court's Findings of Fact and Conclusions of Law (ECF No.

5

270) is hereby amended as follows:

The Court finds that the SIR within St. Paul's insurance policy was satisfied by Continental's $750,000 settlement payment on Crown's behalf. Accordingly, St. Paul is hereby ordered to reimburse Continental in the amount of $1,875,000, which represents 75% of the $2,500,000 paid by Continental from its umbrella policy.

IT IS SO ORDERED.

Dated: June 19, 2015

Troy L. Nunley
United States District Judge